**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § |
| | § |
| **Plaintiff,** | § |
| | § |
| **v.** | § **Case No.:  3:16-cv-450** |
| | § |
| **Nathan Halsey and TexStar Oil Co., Ltd.,** | § |
| | § |
| **Defendants.** | § |
| ——————————————————————— | § |

## COMPLAINT

For its complaint against Defendants Nathan Halsey and TexStar Oil Co., Ltd.

("TexStar"), Plaintiff Securities and Exchange Commission ("SEC" or "Commission") alleges as

follows:

**Summary**

1.      From approximately late 2011 through at least March 2014, Halsey carried out a

securities fraud scheme through TexStar, a Dallas-based oil-and-gas company he controlled,

raising at least $1.1 million.  In January 2012, Halsey invited a group of investors from China to

Dallas to visit an oil well owned by another company—referred to anonymously in this

complaint as "Company A"—unrelated to TexStar.  These and other investors later sent Halsey

$1.1 million to acquire interests in the Company A well.  Without disclosure to investors, Halsey

diverted their money to TexStar.  When the investors later complained that they were not

receiving returns from their well investment, Halsey entered agreements with them, stating that

their well investment had been "converted" to shares of stock in another Halsey-controlled

company, TexStar Oil Corp. ("TexStar Corp").  The agreement was false:  The investors never

owned any interest in the well, and no such stock conversion ever took place.

2.      In March 2012, Halsey opened a TexStar office in Shanghai, China.  There, he employed consultants to solicit investors.  Through telephone and face-to-face investor presentations, the TexStar consultants offered TexStar limited-partnership securities for sale to prospective investors in China and Southeast Asia.  At Halsey's direction, the consultants disseminated to investors a prospectus containing statements that, among other things, TexStar held profitable oil-and-gas assets, that it had history of drilling and production successes, and that it made high rates of return for investors.  In reality, all of these statements were false: TexStar held no profitable oil-and-gas assets, never drilled or produced any wells, and never generated investor returns.

3.      In or around June 2013, Halsey formed a marketing company called Insider 21, which offered members "networking opportunities" and "investment resources."  To attract members to Insider 21, Halsey offered prospective members shares of TexStar Corp stock that he owned.  He distributed approximately 1.8 million of such shares under this program, but he never filed a Form 4 with the Commission to report the changes in beneficial ownership of his stock.

4.      By reason of the foregoing, TexStar violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b) and 78o(a)], and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5].  Halsey violated Securities Act Section 17(a) [15 U.S.C. § 77q(a)], Exchange Act Sections 10(b) and 16(a) [15 U.S.C. §§ 78j(b) and 78p(a)], and Exchange Act Rules 10b-5 and 16a-3 [17 C.F.R. §§ 240.10b-5 and 240.16a-3].

5.      In the interest of protecting the public from violations by the Defendants, the SEC seeks, among other things, permanent injunctions, disgorgement plus prejudgment interest, and civil money penalties from each Defendant and an officer-and-director bar and conduct-based

injunction against Halsey.

**Jurisdiction and Venue**

6.      The SEC brings this action under Securities Act Section 20(b) [15 U.S.C. §
77t(b)] and Exchange Act Section 21(d) [15 U.S.C. § 78u(d)], seeking to restrain and enjoin the
Defendants permanently from engaging in such acts and practices as alleged herein.

7.      This Court has jurisdiction over this action under Section 22(a) of the Securities
Act [15 U.S.C. § 77v(a)] and Sections 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(e)
and 78aa].  Each of the he fractional undivided interests in oil and gas rights ("oil-and-gas
interests"), limited-partnership interests, and stock offered and sold as described in this
complaint is a "security" as that term is defined under Securities Act Section 2(a)(1) [15 U. S. C.
§ 77b(a)(1)] and Exchange Act Section 3(a)(10) [5 U. S. C. § 78c(a)(10)].

8.      The Defendants, directly and indirectly, made use of the mails or of the means
and instrumentalities of interstate commerce in connection with the transactions, acts, practices,
and courses of business described in this complaint.

9.      Venue is proper because transactions, acts, practices, and courses of business
described in this complaint occurred within the Northern District of Texas.

**Parties**

10.      Plaintiff SEC is an agency of the United States of America charged with
enforcing the federal securities laws.

11.      Defendant TexStar is a Texas limited liability company with its principal place of
business in Dallas, Texas.

12.      Defendant Halsey is an individual, aged 35, who resides in Dallas, Texas.

## STATEMENT OF FACTS

### The Beginning of Halsey's Securities Activities in China and Southeast Asia

13.     In approximately May 2011, Halsey formed an offshore corporation called Falcon Fund to market investment opportunities in China.  Halsey sold memberships in Falcon Fund in China for prices ranging from $1,000 to $5,000, eventually increasing the company's membership roster to approximately 6,000 by October 2011.

14.     Through Falcon Fund, Halsey purported to offer members training on how to invest in foreign markets and opportunities to purchase regional-distribution rights to various multi-level-marketing products.  From Dallas, Texas, Halsey managed Falcon Fund through promoters in China, whom he paid to carry out Falcon Fund's objectives in China and Southeast Asia.

15.     Halsey founded TexStar in 2011.  Halsey served as TexStar's president and managing member.

16.     In 2011, Halsey acquired control over a Nevada public shell company called Millennia, Inc., which eventually changed its name to become TexStar Corp.  TexStar Corp was an SEC-reporting company whose common stock was registered with the SEC under Exchange Act Section 12 [15 U.S.C. § 78l] and quoted for public sale on www.otcmarkets.com under the symbol TEXS.  Halsey served as TexStar Corp's president, CEO, CFO, and sole director.

17.     Halsey exercised control over Falcon Fund, TexStar, and TexStar Corp.  He held ultimate authority over the three companies, including the content of all of their public statements and whether to disseminate such statements.

### The Company A Investment

18.     In late 2011, Halsey invited a representative of Company A, a Texas oil-and-gas

company unaffiliated with Halsey or TexStar, to present an investment opportunity to a group of Falcon Fund members in China.  Company A was seeking to raise money by selling securities in the form of oil-and-gas interests in a Company A oil-and-gas well in Texas.  The Company A representative made the presentation to the Falcon Fund members at a meeting in China in or around December 2011, explaining that Company A was offering for sale interests in the Company A well.

19.     In January 2012, Halsey invited a group of Falcon Fund members to visit Texas. Approximately 25 members traveled from China to Texas for a range of activities paid for and hosted by Halsey, including a chuck wagon BBQ lunch at the Company A well site.  At the BBQ, the Company A representative gave another presentation, introduced Company A's management team, and answered questions by the Falcon Fund members for several hours.

20.     After the Falcon Fund members returned home, three Falcon Fund promoters in China, at Halsey's direction, used Company A offering materials to raise approximately $1.1 million from at least 16 Chinese investors in the first half of 2012.  Some of these investors had attended Halsey's BBQ at the Company A well in Texas.

21.     At Halsey's direction, the promoters transferred the investment proceeds to Halsey.  Although Halsey knew or was severely reckless in not knowing that the money was raised for investment in the Company A well interests, Halsey directed the money to TexStar rather than to Company A.  At TexStar, Halsey used the money for, among other things, funding the opening of a TexStar office in Shanghai, China.  Halsey did not disclose to the investors that he directed their money away from Company A or that TexStar received their money.  And TexStar gave the investors nothing in return for the funds it received.

22.     In late 2013, Halsey learned that investors were questioning the status and

performance of their purported Company A investments and the lack of returns. Even then, Halsey did not disclose to the investors that he had directed their money into TexStar.

23.     Halsey subsequently signed agreements with the investors, promising them that Falcon Fund would convert every "dollar in [Company A] orders" into four shares of TexStar Corp stock. The agreements provided that the investors had no "rights to request the company to convert the shares back to [Company A]." In reality, Halsey knew or was severely reckless in not knowing that the shares could not have been converted "back" to Company A, because Company A never received the investments in the first place.

24.     The agreements further stated: "All [Company A] dividends will cease to stop [sic]." Halsey knew or was severely reckless in not knowing that, in reality, no Company A dividends had ever even begun, because Company A never received the investments.

25.     By these agreements, including the transactions in TexStar Corp stock to effect the purported conversion of so-called Company A orders, Halsey knowingly or severely recklessly perpetuated the false appearance that the investors had acquired interests in the Company A well. And in the same manner, he concealed his misappropriation of their investment principal, earmarked for the Company A well.

26.     A reasonable investor would have considered it important in making an investment decision regarding Company A, TexStar, or TexStar Corp: (1) that Halsey would divert, or had diverted, $1.1 million of investment principal earmarked for Company A to TexStar; (2) that neither Company A nor TexStar ever issued any interests in exchange for the $1.1 million; and (3) that no conversion of Company A "orders" into TexStar Corp stock actually took place. These undisclosed facts were, therefore, material. By failing to disclose these facts, Halsey and TexStar perpetrated a fraudulent scheme on investors and otherwise made and used

untrue statements of material facts in the offer, sale, and purchase of securities.

**Halsey and TexStar's Offering Limited-Partnership Interests**

27.     Halsey opened the TexStar office in Shanghai, China, in March 2012.  From January 2012 to November 2013, TexStar employed consultants in China, paying them nearly $1 million to create promotional materials touting TexStar and other Halsey-related companies and to promote those companies using such materials.  Halsey directed these consultants to offer for sale securities issued by these companies in the form of limited-partnership interests.  At Halsey's direction, the consultants used telephone and face-to-face investor presentations to offer the securities for sale.  From his office in Dallas, Texas, Halsey approved the promotional materials and—by telephone and other methods—supervised TexStar's Shanghai office and its securities-offering activities in China and Southeast Asia.

28.     During this period, and at Halsey's direction, the TexStar consultants provided prospective investors in the Shanghai office a prospectus, offering for sale limited-partnership interests issued by a company called TexStar Investment Corporation, Ltd. ("TexStar Investment").  According to the prospectus, TexStar Investment sought to raise $20,000,000 by selling 40 limited-partnership units for $500,000 apiece.  It described TexStar Investment as the issuer of the limited-partnership units and explained that TexStar would serve as the general partner of the limited partnership.  It represented that each investor would receive a monthly payment based on oil-and-gas production from wells drilled and completed by the limited partnership.

29.     Halsey supervised the prospectus's preparation, contributed to its content, including two personal letters, and reviewed and approved the final version before ordering its distribution to prospective investors.

30.     The prospectus contained untrue and misleading statements, as follows:

A.      "[T]he company's assets, which include mineral rights, leased acreage, proven and estimated reserves, cash and cash equivalents is in the $160,000,000 U.S.D range."  In reality, neither TexStar Investment nor TexStar had any assets.

B.      "As a company, we have completed over 50 projects to date."  In fact, neither TexStar Investment nor TexStar had ever completed any projects.

C.      Halsey has "more than 10 years of successfully completed oil & gas investment programs and projects."  In reality, Halsey had never completed an oil-and-gas investment program or project.

D.      TexStar has "successfully drilled and produced wells in Throckmorton County, and owns other oil-and-gas wells in the county."  In reality, TexStar never drilled, produced, or owned any oil-and-gas wells.

E.      "Returns average over 40% per year, and in many cases have exceeded 100%+ per year."  In reality, TexStar and TexStar Investment never had any returns.

F.      "Current TexStar Projects" include seven oil-and-gas projects in Texas, West Virginia, the North Sea, and Indonesia.  In reality, neither TexStar Investment nor TexStar had any such projects.

G.      "TexStar Oil has made charitable contributions in every market we conduct business and I am looking forward to being able to continue this tradition in China."  In reality, neither TexStar Investment nor TexStar made any charitable contributions.

H.      The Prospectus listed Kara Sands as TexStar's "Chief Marketing Officer" and included a photo of Sands posing alongside former President George Bush and another photo of her posing with former Texas Governor Rick Perry.  In reality, TexStar had no Chief Marketing Officer, and neither Bush nor Perry was associated with TexStar in any way.

I.      The Prospectus included a photo of a purported TexStar officer posing with two men identified as "TexStar partners in the UAE."  In reality, the two men were never TexStar partners, investors, or affiliates.

J.      A section titled "TexStar Tours" described with a 9-day trip

itinerary, including activities like "Chuck wagon BBQ lunch served at a TexStar oil well," and testimonials like "This was an amazing our, we will be coming back!"  In reality, TexStar tours never took place and neither TexStar nor TexStar Investment ever owned any oil wells to visit.

K.        "In most cases, from the time the partnership is capitalized to the time the partners start to receive distribution checks is 120 to 180 days."  In reality, neither TexStar nor TexStar Investments ever had any capitalized partnerships nor did they ever issue a distribution check.

31.     Through TexStar's Shanghai office, Halsey disseminated the prospectus described in paragraph 30, above, to at least 25 prospective investors in China from approximately March 2012 through January 2013.  At the time, Halsey knew or was severely reckless in not knowing that the statements contained in the prospectus and set forth in paragraph 30, above, were untrue or otherwise misleading.  Each of the prospectus statements described in paragraph 30, above, was an untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

32.     In or around June 2013, Halsey formed a marketing company called Insider 21, which offered members "networking opportunities" and "investment resources."  Halsey continued to offer TexStar limited-partnership interests through at least March 2014 through the Insider 21 website.

**Halsey Failed to Make Required SEC Filings**

33.     To attract members to Insider 21, Halsey offered prospective members shares of TexStar Corp stock that he owned.  He distributed approximately 1.8 million of such shares under this program.  But he never filed a Form 4 with the Commission to report the changes in beneficial ownership of his TexStar Corp stock as he was required to do under Exchange Act

Section 16(a) and Exchange Act Rule 16a-3 as an officer and director of TexStar Corp.

## FIRST CLAIM
### Fraud
### Violations of Securities Act Section 17(a)
### Against TexStar and Halsey

34.     Plaintiff Commission re-alleges and incorporates paragraphs 1 through 33 of this

Complaint by reference as if set forth verbatim in this Claim.

35.     Defendants TexStar and Halsey directly or indirectly, singly or in concert with

others, in the offer or sale of securities, by use of the means and instrumentalities of interstate

commerce or by use of the mails have:  (a) employed devices, schemes, and artifices to defraud;

(b) obtained money or property by means of untrue statements of a material fact and omitted to

state a material fact necessary in order to make the statements made, in light of the circumstances

under which they were made, not misleading; and (c) engaged in transactions, practices, and

courses of business which operate or would operate as a fraud and deceit upon the purchasers.

36.     With respect to violations of Securities Act Sections 17(a)(2) and (3), Defendants

TexStar and Halsey were negligent in their conduct and untrue and misleading statements

alleged herein.  With respect to violations of Securities Act Section 17(a)(1), Defendants TexStar

and Halsey engaged in the referenced conduct and made the referenced untrue and misleading

statements knowingly or with severe recklessness.

37.     For these reasons, Defendants TexStar and Halsey have violated and, unless

enjoined, will continue to violate Securities Act Section 17(a) [15 U.S.C. § 77q(a)].

## SECOND CLAIM
### Fraud
### Violations of Exchange Act Section 10(b) and Rule 10b-5
### Against TexStar and Halsey

38.     Plaintiff Commission re-alleges and incorporates paragraphs 1 through 33 of this

Complaint by reference as if set forth verbatim in this Claim.

39.     Defendants TexStar and Halsey, directly or indirectly, singly or in concert with others, in connection with the purchase or sale of securities, by use of the means and instrumentalities of interstate commerce or by use of the mails have:  (a) employed devices, schemes, and artifices to defraud;  (b) made untrue statements of a material fact and omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, and courses of business which operate or would operate as a fraud and deceit upon purchasers, prospective purchasers, and any other persons.

40.     Defendants TexStar and Halsey engaged in the above-referenced conduct and made the above-referenced untrue and misleading statements knowingly or with severe recklessness.

41.     For these reasons, Defendants TexStar and Halsey violated and, unless enjoined, will continue to violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5].

**THIRD CLAIM**
**Violations of Exchange Act Section 16(a) and Rule 16a-3**
**[15 U.S.C. § 78o(a) and 17 C.F.R. § 240.16a-3]**
**Against Halsey**

42.     Plaintiff Commission re-alleges and incorporates paragraphs 1 through 33 of this Complaint by reference as if set forth verbatim in this Claim.

43.     By engaging in the conduct alleged above, Defendant Halsey violated Exchange Act Section 16(a) and Exchange Act Rule 16a-3 [15 U.S.C. § 78p(a) and 17 C.F.R. § 240.16a-3] when he failed to make required filings with the Commission on Form 4 to report the changes in beneficial ownership of his TexStar Corp stock and, unless enjoined, will continue to violate

Exchange Act Section 16(a) and Rule 16a-3.

## RELIEF REQUESTED

Plaintiff Commission respectfully requests that this Court:

(1)     Permanently enjoin Defendants Halsey and TexStar from violating Securities Act Section 17(a) [15 U.S.C. § 77q(a)] and Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5];

(2)     Permanently enjoin Defendant Halsey from violating Exchange Act Section 16(a) [15 U.S.C. §§ 78p(a)] Rule 16a-3 [17 C.F.R. § 240.16a-3];

(3)     Prohibit Defendant Halsey under Securities Act Section 20(e) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(2) [15 U.S.C. § 78l] from acting as an officer or director of any issuer that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)];

(4)     Permanently enjoin Defendant Halsey from directly or indirectly soliciting existing or potential investors to purchase or sell securities, provided however, that such injunction shall not prevent Halsey from purchasing or selling securities for his own account;

(5)     Order each Defendant to disgorge an amount equal to the funds and benefits obtained illegally, or to which the Defendant is otherwise not entitled, as a result of the violations alleged, plus prejudgment interest on that amount;

(6)     Order Defendants TexStar and Halsey to pay civil monetary penalties in an amount determined appropriate by the Court under Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d) [15 U.S.C. § 78u(d)] for the violations alleged herein; and

(7)     Order such other relief as this Court may deem just and proper.

DATED:  February 17, 2016                     Respectfully submitted,


                                              s/Timothy S. McCole
                                              Timothy S. McCole
                                              Mississippi Bar No. 10628
                                              James E. Etri
                                              Texas Bar No. 24002061
                                              Rebecca R. Fike
                                              Texas Bar No. 24065228
                                              United States Securities and Exchange Commission
                                              Fort Worth Regional Office
                                              Burnett Plaza, Suite 1900
                                              801 Cherry Street, Unit #18
                                              Fort Worth, TX 76102-6882
                                              Phone: 817-978-6453 (tm)
                                              Fax: 917-978-4927
                                              mccolet@sec.gov

                                              ATTORNEYS FOR PLAINTIFF