IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>       Plaintiff,<br><br>v.<br><br>TEXSTAR OIL CO., LTD. and<br>NATHAN HALSEY,<br>       Defendants | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 3:16-CV-450-BK |

**ORDER**

Now before the Court is *Plaintiff's Motion for Final Judgment as to Civil Penalties Against TexStar Oil Co., Ltd. and Nathan Halsey*, Doc. 26. For the reasons stated herein, Plaintiff's motion is **GRANTED IN PART**.

**I. BACKGROUND**

Plaintiff Securities and Exchange Commission (the "SEC") commenced this action in February 2016, alleging that TexStar Oil Co., Ltd. ("TexStar") and its president, Nathan Halsey, (collectively "Defendants") violated certain anti-fraud and director-reporting provisions of the Securities Act of 1933, 15 U.S.C. § 77a, ("Securities Act") and the Securities Exchange Act of 1934, 15 U.S.C. § 78a, ("Exchange Act") (collectively the "Acts"). *See* Doc. 1. In March 2017, upon the parties' request, the Court approved two consent decrees and entered agreed judgments against Defendants. *See* Doc. 20; Doc. 21; Doc. 22; Doc. 23. Specifically, Defendants were permanently enjoined from violating certain provisions of the Acts, and jointly and severally ordered to disgorge "$2,250,000, representing profits gained as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $281,883, for a total of $2,531,883." Doc. 21; Doc. 22. However, the judgment also left to the Court the question of

the imposition of civil penalties – to be determined upon subsequent motion of the SEC. Doc. 19-1 at 2; Doc. 19-2 at 2. On October 27, 2017, the SEC filed the motion *sub judice* moving for civil penalties against Defendants. Doc. 26. Subsequently, Defendants' filed a response[1] and the SEC filed its reply. Doc. 28; Doc. 29.

## II. APPLICABLE LAW

Whereas disgorgement aims to return the offender to his or her pre-violation position through the forfeiture of ill-gotten gains, civil penalties are punitive in nature, "designed to punish the individual violator and deter future violations of the securities laws." *S.E.C. v. AmeriFirst Funding, Inc.*, No. 3:07-CV-1188-D, 2008 WL 1959843, at *7 (N.D. Tex. May 5, 2008) (Fitzwater, C.J.) (citations and internal quotation marks omitted). Three escalating tiers of civil money penalties are authorized by section 20(d) of the Securities Act, 15 U.S.C. § 77t(d)(1), and section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3)(A). A first-tier penalty may be imposed based on a showing that the defendant violated the Acts. *S.E.C. v. Evolution Capital Advisors, LLC*, No. H-11-2945, 2013 WL 5670835, at *4 (S.D. Tex. Oct. 16, 2013) (citing 15 U.S.C. §§ 77t(d)(2)(A), 78u(d)(3)(B)(i)). A second-tier penalty may be imposed upon a showing that the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." 15 U.S.C. §§ 77t(d)(2)(B), 78u(d)(3)(B)(ii). A third-tier penalty may be imposed if a violation meets the requirements for a second-tier penalty and "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii).

---

[1] Although the parties filed a joint stipulation extending Defendants' deadline to file a response from November 17, 2017 to November 27, 2017, Defendants response was untimely filed on November 29, 2017. *See* Doc. 27; Doc. 28.

In determining whether and in what amount to impose civil penalties, courts consider the following five factors:

> (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition.

*AmeriFirst*, 2008 WL 1959843, at *7 (collecting cases applying the five factors). Courts may also consider the degree to which a defendant has cooperated with law enforcement authorities and whether other criminal or civil sanctions would adequately punish the defendant. *Id.* (citations omitted). Ultimately, however, the amount of civil penalties to be imposed is left to the discretion of the district court. *S.E.C. v. Valdez*, 661 F. App'x 814, 816 (5th Cir. 2016) (per curiam) (citing *S.E.C. v. Kern*, 425 F.3d 143, 153 (2d Cir. 2005)).

### III. ANALYSIS

The SEC asks that the Court impose (1) first-, second-, and third-tier penalties against Halsey, totaling $4,282,500, and (2) second- and third-tier penalties against TexStar, totaling $20,975,000. Per the agreed Judgments entered against Defendants, the allegations in the Complaint are "accepted as and deemed true" for the purposes of this motion. Doc. 21 at 5; Doc. 22 at 7.

A.    **Civil Penalties Against Nathan Halsey**

    **1. First-Tier Penalty**

The SEC seeks a first-tier penalty against Halsey in the amount of $7,500 for his failure to file a Form 4 with the SEC to report the changes in beneficial ownership of his TexStar Corp. stock in violation of section 16(a) and Rule 16a-3 of the Exchange Act. Doc. 26 at 7, 9. While the Exchange Act states that a first-tier penalty for a natural person shall not exceed the greater

of "(i) $5,000 . . . or (ii) the gross amount of pecuniary gain to such defendant as a result of the violation," 15 U.S.C. § 78u(d)(3)(A), that $5000 figure has been adjusted for inflation to $7,500 for violations occurring after March 4, 2009, *see* 17 C.F.R. § 201.1001, Table 1. Although Defendants object to Plaintiff's request for any penalties based on, *inter alia*, their inability to pay, they do not object to this calculation. Doc. 28 at 2, 6. As alleged in the Complaint, Halsey violated the Exchange Act sometime after June 2013 when he failed to file a Form 4 with the SEC, thereby supporting the imposition of a first-tier penalty in the amount of $7,500. Doc. 1 at 9; *Evolution Capital*, 2013 WL 5670835, at *4.

**2. Second-Tier Penalty**

The SEC seeks a second-tier penalty against Halsey in the amount of $1,875,000 for his dissemination of fraudulent prospectuses to at least 25 investors in a securities offering, in violation of section 17(a) of the Securities Act. Doc. 26 at 9. The SEC avers it arrived at this sum by multiplying the number of violations, i.e., 25 (the number of prospectuses disseminated) by $75,000 (the maximum second-tier penalty that may be imposed against a natural person for a single violation of the Securities Act during the relevant period). *See* 15 U.S.C. § 77t(d)(2)(B); 17 C.F.R. § 201.1001, Table 1. Defendants also do not object to this calculation. Doc. 28 at 2, 6.

As recounted in the Complaint, the prospectuses, which were prepared and distributed at Halsey's direction between March 2012 and January 2013, aimed to generate $20 million in investments and were replete with false and misleading statements that portrayed TexStar and Halsey as power players in the oil and gas industry. *See* Doc. 1 at 7-9 (listing the false and misleading statements in the prospectus). For example, the prospectuses stated that TexStar had assets of approximately $160 million, had completed over 50 projects, and boasted average

4

yearly returns of over 40 percent.  However, in actuality, TexStar had no assets, never completed a project, and never had any returns.  Doc. 1 at 8.  While the SEC concedes that no individuals suffered losses from these offerings, the fraud and deceit evidenced by this scheme, as alleged in the Complaint, satisfies the statutory requirements for the imposition of a total second-tier penalty against Halsey in the amount of $1,875,000.

### 3. Third-Tier Penalty

The SEC seeks a third-tier penalty against Halsey in the amount of $2,400,000 for his misappropriation of $1.1 million in investment proceeds from 16 foreign investors in violation of section 17(a) of the Securities Act and section 10(b) and Rule 10b-5 of the Exchange Act.  Doc. 26 at 9.  The SEC avers that this amount was calculated by multiplying the number of violations, to-wit: 16 (the number of defrauded investors) by $150,000 (the maximum third-tier penalty that can be imposed against a natural person for a single violation of the Acts during the relevant time period).  *See* 15 U.S.C. § 77t(d)(2)(C); 15 U.S.C. § 78u(d)(3)(A); 17 C.F.R. § 201.1001, Table 1.  Defendants do not object to this calculation.  Doc. 28 at 2, 6

As recounted in the Complaint, in 2012, Halsey enticed 16 foreign investors to give him $1.1 million by leading them to believe their money would be invested in a specific oil and gas company.  Halsey then re-directed the proceeds – without the investors' knowledge or permission – to TexStar, using it to, *inter alia*, fund the opening of TexStar's office in Shanghai, China.  The investors were not compensated for their outlay.  Doc. 1 at 5-7.  As alleged, the scheme involved high levels of fraud and deceit that resulted in substantial losses of $1.1 million.  Accepting these allegations as true, the statutory requirements are met for the imposition of a third-tier penalty against Halsey in the maximum amount of $2,400,000.  The Court next considers what, if any, civil penalties should be imposed.

### 4. Application of the *AmeriFirst* Factors

The SEC argues that the *AmeriFirst* factors weigh in favor of imposing the maximum civil penalties against Halsey, while Defendants contend that the third and fifth factors weigh against imposing such penalties. See Doc. 26 at 8; Doc. 28 at 4-5. The SEC's argument is well taken.

Regarding the first and second factors, Halsey's actions were plainly egregious and their perpetration required a high degree of scienter; indeed, Defendants do not argue to the contrary. Regarding the third factor, Defendants argue that the allegations in the Complaint "do not demonstrate that Defendant's [sic] activities created substantial harm or risk of substantial harm to others," and emphasize that Plaintiff has not shown "*any harm whatsoever to a single United States citizen or resident*." Doc. 28 at 4 (emphasis in original). However, Halsey's misappropriation of $1.1 million is undoubtedly a substantial loss, and the dissemination of fraudulent prospectuses that aimed to generate $20 million certainly created a risk of substantial losses. Moreover, Defendants' unsupported argument that the fraud provisions of the Acts are somehow unconcerned with foreign victims has been aptly characterized by the Court of Appeals for the Fifth Circuit as "an absurd notion." See United States v. Cook, 573 F.2d 281, 283-84 (5th Cir. 1978) ("That Congress would allow America to be a haven for swindlers and confidence men when the victims are [foreigners] while expecting the highest level of business practice when the investors are American is simply unimaginable") (citation and internal quotation marks omitted). Regarding the fourth factor, Halsey's misconduct was recurrent, as evidenced by his commission of multiple fraudulent schemes over the course of several years. See S.E.C. v. Provident Royalties, LLC, No. 3:09-CV-1238-L, 2013 WL 5314354, at *9 (N.D. Tex. Sept. 23,

6

2013) (Lindsay, J.) (finding fraudulent conduct was recurrent where it involved multiple entities and spanned multiple years).

Regarding the fifth factor, Halsey argues that no civil penalty should be imposed due to his purported poor financial condition. Doc. 28 at 5-6. This argument is unconvincing. As this Court has held, a defendant's inability to pay must be established by a preponderance of the evidence. *S.E.C. v. Harris*, No. 3:09-CV-1809-B, 2012 WL 759885, at *5 (N.D. Tex. Mar. 7, 2012) (Boyle, J.) (citing *S.E.C. v. Huffman*, 996 F.2d 800, 803 (5th Cir. 1993)). However, rather than present evidence of financial condition, both Defendants merely (1) list their liabilities; (2) note that, starting in January 2018, they will begin making monthly payments of $2,500 towards a $2,300,000[2] judgment; and (3) state that TexStar's post-judgment production of 13,000 documents and Halsey's deposition testimony "clearly show that [they] cannot now or in the future pay the disgorgement amount, or a civil penalty." Doc. 28 at 4-5.

This Court has previously rejected such conclusory assertions of financial hardship. *See, e.g.*, *S.E.C. v. Allen*, No. 3:11-CV-882-O, 2012 WL 5875623, at *7 (N.D. Tex. Nov. 21, 2012) (O'Connor, J.) (finding that defendants did not establish an inability to pay by a preponderance of the evidence where they presented no evidence of their lack of ability to pay); *Harris*, 2012 WL 759885, at *5 ("[I]nability to pay must be established by a preponderance of the evidence, rather than the plain statement of a defendant, as we have here.") (citation omitted). However, even assuming such a scant showing satisfied their burden, Defendant Halsey's inability to pay is

---

[2] Defendants misstate the total amount awarded in the March 2017 judgments, which, as stated *supra*, totaled $2,531,883. *See* Doc. 21 at 3; Doc. 22 at 4.

7

simply one factor to consider and would not prevent the Court from imposing a civil penalty.[3] *Harris*, 2012 WL 759885, at *5 (citation omitted).

Accordingly, the Court finds that the *AmeriFirst* factors weigh in favor of imposing the maximum statutory penalties supported by the evidence. Thus, the SEC's motion for civil penalties against Halsey is **GRANTED**, and a civil penalty is assessed against Halsey in the total amount of $4,282,500, which includes a first-tier penalty of $7,500; a second-tier penalty of $1,875,000; and a third-tier penalty of $2,400,000.

**B.    Civil Penalties Against TexStar**

The SEC also seeks second- and third-tier penalties against TexStar of $9,375,000 and $11,600,000, respectively, for essentially the same reasons it seeks second- and third-tier penalties against Halsey. Doc. 26 at 9. However, as stated in the Complaint, Halsey served as TexStar's president and managing member, and through those positions "held ultimate authority" over the company. Doc. 1 at 4. Indeed, as alleged in the Complaint and recounted herein, it is Halsey's specific conduct that warrants the imposition of second- and third-tier penalties, i.e., the dissemination of the prospectuses and the misappropriation of $1.1 million in investment proceeds. *See* Doc. 1.

By this Order, Halsey is already being assessed substantial civil penalties of more than $4 million for his actions. The SEC does not explain why imposing an additional $20 million penalty against TexStar for Halsey's conduct is warranted. *See S.E.C. v. Reynolds*, No. 3:08-CV-0438-B, 2013 WL 3479825, at *6 (N.D. Tex. July 11, 2013) (Boyle, J.) (refusing to impose civil penalties against a defendant entity where the SEC focused instead on the roles of the

---

[3] Notably, while not its burden, the SEC has presented evidence that tends to dispute Halsey's claim of financial hardship, Doc. 29 at 2-3.

individual defendants and did not explain why a separate penalty should be imposed against the entity). On the contrary, based on the facts and circumstances of this case, the imposition of the maximum civil penalties should sufficiently punish Halsey, the individual violator, and deter him and others from violating securities laws. *AmeriFirst Funding, Inc.*, 2008 WL 1959843, at *7; *see Evolution Capital*, 2013 WL 5670835, at *5 (imposing a third-tier penalty against an individual defendant, but refusing to impose third-tier penalties against defendant entities, reasoning that because the individual defendant controlled the entities, additional penalties were "not warranted to serve the twin goals of punishment and deterrence"). Accordingly, the SEC's motion for civil penalties against TexStar is **DENIED**.

## IV. CONCLUSION

*Plaintiff's Motion for Final Judgment as to Civil Penalties Against TexStar Oil Co., Ltd. and Nathan Halsey*, Doc. 26, is **DENIED** as to Defendant TexStar and **GRANTED** as to Defendant Nathan Halsey. Accordingly:

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that Defendant Nathan Halsey is liable for a civil penalty in the amount of $4,282,500.00, pursuant to Section 20(d) of the Securities Act of 1933 [15 U.S.C. § 77t(d)] and Section 21(d) of the Securities Exchange Act of 1934 [15 U.S.C. § 78u(d)].

Defendant Nathan Halsey shall satisfy this obligation by paying the full penalty amount specified in this section to the Securities and Exchange Commission within 14 days after entry of this Final Judgment.

Defendant Nathan Halsey may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request. Payment may also be made directly from a bank account via Pay.gov through the SEC website at

http://www.sec.gov/about/offices/ofm.htm.  Defendant Nathan Halsey may also pay by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to

>     Enterprise Services Center
>     Accounts Receivable Branch
>     6500 South MacArthur Boulevard
>     Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; Nathan Halsey as a defendant in this action; and specifying that payment is made pursuant to this Final Judgment.

Defendant Nathan Halsey shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action.  By making this payment, Defendant Nathan Halsey relinquishes all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Defendant Nathan Halsey.

Amounts ordered to be paid as civil penalties pursuant to this Judgment shall be treated as penalties paid to the government for all purposes, including all tax purposes.  To preserve the deterrent effect of the civil penalty, Defendant Nathan Halsey shall not, after offset or reduction of any award of compensatory damages in any Related Investor Action based on Defendant Nathan Halsey's payment of disgorgement in this action, argue that Defendant Nathan Halsey is entitled to, nor shall Defendant Nathan Halsey further benefit by, offset or reduction of such compensatory damages award by the amount of any part of Defendant Nathan Halsey's payment of a civil penalty in this action ("Penalty Offset").  If the court in any Related Investor Action grants such a Penalty Offset, Defendant Nathan Halsey shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the United States Treasury, as the Commission directs.  Such a

payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this Judgment.  For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Defendant Nathan Halsey by or on behalf of one or more investors based on substantially the same facts as alleged in the Complaint in this action.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

**IT IS SO ORDERED** on January 8, 2018.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE